**FILED**

SEP 1 4 2015



CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

Shaun Folls                          84197.198

# CIV-15- 996 M

*(Enter above the full name of the plaintiff*
*or plaintiffs in this action)*                  *(Inmate Reg. # of each Plaintiff)*

v.

CIVIL ACTION NO. _____
*(Number to be assigned by Court)*

Board of Grady County

Commissioners    et al

*(Enter above the full name of the defendant*
*or defendants in this action)*

Jury Demand
Plaintiff hereby demands a
trial by Jury on all counts
triable

Defendant(s).

verified
**COMPLAINT**

I.   **Parties**

A.   Name of Plaintiff:   Shaun Folls

Inmate No.:   84197.198

Address:   u.s. penitentiary   Adx

P.O. Box 8500   Florence co 81226

\* Mr Folls sought to exhaust the grievance
procedure at Grady county Law Enforcement center
but defendants would not provide forms

pursuant to 28 u.s.c §1746 I declare and verify under penalty of Perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 9-7-2015                    Shaun Folts

SHAUN FOLTS

## PRELIMINARY STATEMENT

This is a civil rights action brought by Shaun Folts a person confined in the Federal Bureau of Prisons for damages Pursuant to 42 u.s.c §1983 alleging that his conditions of confinement while in the Grady County Law Enforcement center were such that Defendants violated Mr Folts right to be free from cruel and unusual Punishment under the First, Fifth, Sixth, and Eighth Amendments to the United States constitution.

## PARTIES

Defendant Board of county commissioners of Grady County ("Commissioners") is organized and existing under the laws of the state of oklahoma

Defendant Grady county criminal Justice Authority ("GCCJA")

Defendant Jim Weir at some times relevant to this action sheriff of Grady County. Under oklahoma law the sheriff is responsible for the proper management of the Jail and is a policy maker / manager.

Defendants Jim Gerlach, Lieutenant Keef, Lieutenant King,

P 1

Eric Forsythe ____ on information and ____ belief was at all relevant times hereto employed by the "commissioners" and/or "GCCJA" and/or GCSD .

Defendants at all times relevant hereto acted in the capacity of agent, servant, and employee of "commissioners" and/or "GCCJA" and/or "GCSD" within the scope of their employment as such and acting under color of state law.

## Jurisdiction

This cause of action arises under 42 U.S.C §1983 and the First Fifth, Sixth, and Eighth Amendments of the United States Constitution and under the Oklahoma Constitution Article II section 9 Jurisdiction is conferred upon this court by 28 u.s.c § 1331, 28 u.s.c § 1343. This court has supplemental Jurisdiction over Plaintiffs state claims Pursuant to 28 u.s.c §1367 Plaintiff has timely satisfied all the prerequisites for filing suit under the Oklahoma Government tort claims Act and Jurisdiction and Venue are proper. Venue is proper under 28 u.s.c § 1391 (b)

## re PARTIES

At all times relevant "herein" the defendants and each of them were duly appointed qualified and acting employees or contractors of the Board of County commissioners of Grady County, a government entity within the state of Oklahoma and a person under 42 u.s.c §1983, The Grady county criminal Justice Authority ("GCCJA") and/or Grady County Sheriff Department ("GCSD") and at all times each defendant was acting in the course and scope of such employment, agency or contract and under color of

state law.

Plaintiff is informed and believes and thereon alleges that defendants "commissioners" and/or "GCCJA" and/or "GCSD" and/or Jim Weir, and/or Jim Gerlach individually and DOES 1 through 10 inclusive, at all times mentioned herein (a) were responsible for establishing and maintaining policies and procedures concerning the protection of inmates from physical and mental injury, were responsible for making official policy for conducting, supervising, administering, monitoring, commanding, overseeing, and controlling the operation and management of the "GCCJA", GCSD, Grady County Law Enforcement center "GCLEC" and the Intergovernmental Agreement (IA) including those assigned per the (IA) to transport Federal Prisoners (c) were responsible for the safety, security, and orderly running of "GCLEC" and/or "GCSD" and/or the ("IA"), the supervision of the subordinate personnel and employees of "GCSD" and/or GCLEC including those assigned per the "IA" to transport Federal Prisoners, including defendants captains, Lieutenants, detention officers, doctors, nurses, trained mental health professionals, Lieutenants Keef, Lieutenant King, Eric Forsythe, and DOES 11-20 as well as the policies and practices employed at "GCLEC" and GCSD and/or per the "IA" with respect to inmate protection from physical as well as mental injury (d) were responsible for the proper-maintenance and sanitation of "GCLEC" (e) were responsible for the provision of adequate medical care for persons at "GCLEC" and/or biens transported by those assigned per the "IA" and specifically to Plaintiff. Defendants "Weir", Gerlach, individually, the "Commissioners" and/or "GCCJA" and/or "GCSD" and/or DOES 1 through 10 are sued officially and individually for their acts and/or omissions in their capacity of officials acting under color of state law.

Plaintiff ........ person alleges that defendants, Lieutenant Keef, Lieutenant King, Eric Forsythe individually, captains, Lieutenants, detention officers, Sheriff deputies, Does 11 through 20 and each of them are employees by and through defendants "Commissioners" and/or "GCCJA" and/or "GCSD" and/or "GCLEC" and/or per the "IA" and are responsible for ensuring that persons are not subjected to inhumane treatment and/or conditions of confinement including deliberate indifference constituting cruel and unusual punishment and owe an ordinary duty of care to persons (per the IA also) including those biens transported by "GCSD", "GCCJA" per the "IA"

Plaintiff is further informed and believes and thereon alleges that defendants doctors, nurses, aids, trained mental health professionals, employees, health care providers, individually and does 1 through 20 were at all times entrusted with the responsibility to provide medical and mental health services to plaintiff during his confinement at GCLEC and are sued as individuals for their acts and/or omissions in their capacity of officials acting under color of state law.

Plaintiff is further informed and believes and thereon alleges that defendants does 1 through 20 individually were at all times herein officials, officers, agents, and/or employees of defendant "Commissioners" and/or "GCCJA" and/or "GCSD" and were responsible for making official policy and for conducting, supervising, administering, monitoring, commanding, overseeing and controlling the operation and management of GCLEC at all relevant times herein defendants 1 through 20 are sued as individuals for their acts and/or omissions in their capacity of officials acting

under color...

Plaintiff is Further informed and believes that defendants Weir, Gerlach, individually; defendants Keef, King, Forsythe, captains, Lieutenants, sheriff deputies and/or employees, detention officers, individually and defendants doctors, nurses, aids, trained mental health professionals and/or employees Health care providers and/or employees, individually, DOES 1 through 20 and defendants commissioners and/or GCCJA and/or GCSD and/or GCLEC were at all times mentioned herein responsible for the establishing and maintaining of all local, county, state, Federal, institutional and contractual policies procedures and stipulations.

Defendants individually and DOES 1 through 20 and each of them were responsible in some manner for the injuries and damages alleged herein. The true names and capacities of Defendants DOES 1 through 20 and each of them are presently unknown to Mr Folts. Mr Folts upon information and belief alleges that each of them is responsible in some manner for the injuries and damages herein. When their true names are ascertained Mr Folts will amend this complaint by inserting their true names and capacities herein.

Mr Folts (plaintiff) is Further informed and believes and thereon alleges that 'two' unknown DOE Defendants, individually were at all times herein deputies and/or officers and/or agents and/or employees of defendants 'commissioners' and/or GCCJA and/or GCSD and working at the time of the events described herein, Transporting" (July 10 2014) Mr Folts From 'GCLEC' to Springfield Mo. In his conduct, each defendant personally participated in the violations of Plaintiffs rights and knew at all relevant times

that the officer(s) and or employee(s) named (or employee) was violating Plaintiffs rights. Each is sued in his individual capacity. When their true names are ascertained plaintiff will amend this complaint by inserting their true names and capacities herein.

All defendants and each of them were at all relevant times herein responsible for the safety and security of inmates confined in "GCLEC" and/or transported by employees of defendants including the plaintiff and owed a duty of ordinary care to Plaintiff

Plaintiffs cause of action is against all defendants in both their individual and official capacities

On information and belief defendants were responsible for supervising those employed at "GCLEC" including captains, Lieutenants, detention officers, medical - mental health personnel and those charged with assessing compliance with the Intergovernmental Agreement (IA) between the GCCJA and the United States Marshals Service with respect to care, custody, and control of persons confined in "GCLEC" and transported by "GCCJA" and/or "GCSD" These responsibilities were required to be carried out in a manner consistant with the legal mandates that govern the operation of the "GCCJA", "GCSD", "GCLEC" including all relevant policies, procedures, directives, and protocols, including the "IA".

Defendant officials in the "Commissioners" and/or "GCCJA" and/or "GCSD" and/or "GCLEC" are and were aware of and tolerate and tolerated certain practices by subordinates, employees in the "commissioners" and/or "GCCJA" and/or "GCSD" including those that are inconsistant with

Formal Pol: cy, practices, procedures, and customs, de spread Long standing and deeply embedded in the culture of the agencies constitute unwritten policies or customs. The "commissioners" and/or "GCCJA" and/or "GCSD" and/or "GCLEC" are also responsible for the appointment, training, supervision, and conduct of all commissioners and/or "GCCJA" and/or "GCSD" and/or "GCLEC" employees including those employed to provide medical, mental health care and/or treatment.

At all times relevant to this action defendants were responsible for the detention standards at "GCLEC" including admissions, releases, records; security and control; supervision, classificat ion and segregation; Safety and Sanitation and hygiene standards food service, Medical, Mental health services, training, staff development; and physical plant. all to ensure that GCLEC would be safe, humane, and protect mr Folts statutory and Constitut ional rights.

At all times relevant to this action defendants were deliberately indifferent to the unreasonable risk of harm caused by customs, practices and policies that resulted in innefective medical care and/or treatment, mental health care and/or treatment request and referral system, screening process, delayed access to medical care and/or treatment and Mental health care and/or treatment and the none delivery of standard medical care and/or treatment and mental health care and/or treatment. One consequence of such custom practice and policy is that Plaintiff known by defendants as diagnosed with mental illness and other serious mental conditions was upon biens admitted to "GCLEC" assigned to live in their segregated, solitary, observation cell that had Human Excrement ("FECES") smeared on the walls and splattered on the cieling

dried blood saliva, floss and most if not all forms of sensory stimuli where defendants attempted to control Mr Folts untreated mental health problems by exposing him to infectious diseases and endangering his health and safety.

Another consequence is that defendants having knowledge of Mr Folts mental health problems could of avoided mr Folts suicide attempt on July 9 2014 if he had recieved timely and adequate mental health care and/or treatment by a trained mental health professional.

Mr Folts was informed by a DOE Defendant that GCLEC employees were notified by Federal Transfer Center that he mr Folts posed a threat to himself.

Never the less defendants failed to "Screen" and/or treat Mr Folts mental illness by a trained mental health professional.

Even after the suicide attempt on July 9 2014 where LT Keef, Lt King, Eric Forsythe, were summoned to respond to Plaintiffs cell to assist in restraining him, no one screened, examined, treated, counseled, interviewed, mr Folts, No trained mental health professional responded to nor was summoned to speak to mr Folts. Defendants instead chose to take mr Folts bedding and property and place him back in the unsanitary cell with the "Feces" smeared on the walls and cieling inflicting additional harm. The decision to place mr Folts back in the cell is otherwise abuse and/or torture.

Mr Folts also informed GCLEC DOE Defendant(s) detention officers, nurses, medical staff, he is prescribed "Arch supports" to alleviate pain in both feet. Defendants were aware without the Arch supports mr Folts would suffer pain. Defendants refused to provide mr Folts his Arch supports causing mr Folts to suffer unnecessary and excrutiang pain both feet 7 days

FACTUAL BACKGROUND
Case 5:15-cv-00996-SLP   Document 1   Filed 09/14/15   Page 10 of 25
re "commissioners" and/or GCCJA and/or GCSD and/or GCLEC

## Customs   Practices   and   Policies

SHAUN FOLTS is the victim of a perverse and pervasive practice sanctioned at the highest levels of the Board of County Commissioners of Grady County ("commissioners") and/or Grady County Criminal Justice Authority ("GCCJA") and/or Grady County Sheriff Department ("GCSD") and/or Grady County Law Enforcement Center ("GCLEC") in which the "GCSD", Sheriff Weir", the "GCLEC" Facility Director, Warden, Administrator, GCSD deputies, GCLEC detention officers, captains, Lieutenants, medical and mental health providers, Nurses, Doctors, subjected persons to deprivation; of their rights. The "commissioners" and/or "GCCJA" and/or "GCSD" were placed on notice regarding persons similarly situated as plaintiff who filed complaint that are a matter of public record, through their own internal systems and/or media and/or courts and/or other means. The defendants failed to enforce mandatory duties, rights, regulations, failed to take corrective action, and allowed employees to engage in breaching their duty, depriving persons their rights, failing to enforce duties, rights, regulations, and the officials responsible for assuring that employees misconduct does not occur have consistantly failed to train, supervise, enforce, correct, and discipline employees who have engaged in such misconduct including failing to investigate complaints, failing to enforce rules, regulations, policies, rights, duties, failing to correct wrongdoing, breaching their duties, failing to manage policies, failing to protect detainees rights, for example:

Richard Allan Banks case No. 5:13-cv-0103 HE u.s.d.c W.d. OK complained about being subjected to poor conditions of confinement while at GCLEC. Filthy dirty cell, no cleaning supplies, no responses by staff to his written requests to staff and complaints, exposed to blood, no phone calls, no recreation to exercise, no law library, GCLEC warden, captains, detention officers, refused to respond to his complaints and requests for their assistance.

Mr Norman Joe Langford   Case No 5:08-cv-00389-F   Filed in u.s.d.c W.D. OK alleging denial of mental health care, denied grievance forms, denied mental health care before and after his suicide attempt, requests to staff not answered, cruel and unusual punishment, Mr Langford states he suffered mental illness which was ignored by Grady County officials resulting in plaintiffs mental health to deteriorate, denied recreation to exercise, complained for 2 yrs while at Grady Jail about conditions and officials subjecting him to customs, practices and policies of unconstitutional conditions of confinement.

Mr Kendall Lowrey   Case No 5:07-cv-00620-R   u.s.d.c W.D. OK alleging, denied access to exercise, Requests to staff filed but staff fail to respond, no investigations, no corrective action by Grady County officials,

Mr David Andrews,   Case No. 5:07-cv-00958-D   u.s.d.c W.D. OK alleging requests to call his Attorney are denied. No Law Library. Employee writes "We dont have a Law Library"

TROY ROUSE   Case No: 5:07-cv-01428-C   u.s.d.c W.D. OK alleged a policy of lack of timely medical care. Placement in a dangerous cell, that a nurse tells him he needs stiches and a tetnus shot but then never delivers neither and that the Doctor will see him Monday but then doesnt.

Mr Christopher Snider   Case No. 5:09-cv-00822-M   u.s.d.c W.D. OK alleged bieng placed in Administrative Segregation without bieng provided "Notice" es to why, recieves no responses to his requests to medical, deprived of Sensory stimuli causing his mental problems to become worse, cruel and unusual punishment, filthy cell, denied recreation to exercise, Forced to smell his Feces and urine for days, denied cleaning supplies, negligence, physical pain, unsanitary,

P 10

Ms Res... will... on behalf of Gerose Rouse ⟨DECEASED⟩. Mr Rouse committed suicide at Grady County Jail. Ms Williams allesed deliberate indifference to Mr Rouse Mental Health needs. Violations of his rights. Failing to provide mr Rouse with mental health care and/or treatment. Failing to evaluate (screen) Mr Rouse mental health. Failing to follow policies, procedures, suicide prevention.

These cases provide only representative examples of the rampant use of abuse by Grady county employees and the lack of training and/or supervision on the part of Grady county Board of county commissioners and/or Grady county criminal Justice Authority and/or Grady county Sheriff Department and/or Grady county Law enforcement center, acts, omissions, customs, practices and policies that prevent this dangerous and unconstitutional conduct and who encourage, condone, tolerate, and ratify the use of exposing citizens to unconstitutional conditions of confinement.

Mr Folts submitted numerous complaints to oklahoma state agencies e.g oklahoma state Dept of health, Oklahoma attorney General office, Grady county officials, commissioners, GCCJA, GCSD GCLEC. As of this date Plaintiff has not recieved any responses nor is aware of any investigations initiated nor corrective action in regards to plaintiffs complaints.

re  TRANSFER TO FEDERAL TRANSFER CENTER
(FTC)

On or about June 19 2014 Plaintiff Shaun Folts was sent to the Federal Transfer Center in Oklahoma City OK. from Florence Colorado.

Plaintiff was en route to the Medical Center For Federal Prisoners "MCFP" in Springfield Missouri to be examined by Psychologists.

Mr Folts arrived at the FTC on June 19 2014 and spent approximately two weeks there waiting for a bus ride. During those two weeks Plaintiff was seen by "FTC" Facility Psychologist Dr Gerrard. Mr Folts is diagnosed and suffers from Mental Illness.

On July 3 2014 Mr Folts was scheduled to leave and was told so. From 3:00 am till 10:00 am Mr Folts waited (stood) by his cell door to be escorted by Federal employees to the bus, only nobody ever came.

Mr Folts was approached by a Federal employee smiling who said "You missed the bus", "Shame now you have to sit here for two more weeks". Mr Folts was told this employee deliberately left Mr Folts off the bus due to unknown reasons.

Mr Folts Faced with the prospect of having to sit at the Transfer Center for two more weeks and possibly miss being examined - treated at the Medical Center in Springfield Missouri, Mr Folts requested to speak to the Warden, who showed up, learned what was done and became visibly upset.

At approximately 9:15 am someone approached Mr Folts cell telling him they found another seat on another bus. Mr Folts had an idea it was a lie. It was.

Mr Folts was escorted to the garage area where buses usually are however there were no buses. A van approached and two persons exited wearing black uniforms. The Female (DOE DEFENDANT) told Plaintiff to set in that she was driving him to Springfield right then. Plaintiff had no idea who "they" were. Plaintiff was perplexed that "County" Law Enforcement would drive him a "Federal Prisoner" to Springfield Missouri. Plaintiff not having a choice and being fully restrained complied and got in.

## FACTUAL BACKGROUND

### re TRANSFER TO "GRADY COUNTY LAW ENFORCENT CENTER" "GCLEC"

The Grady County Criminal Justice Authority "GCCJA" is a beneficial trust that operates the grady county law enforcement center and employs those who work there.

The "GCCJA" has entered in to an "Intergovernmental Agreement" (IA) with the United States Marshal Service for the guarding and transportation of federal detainees while housed at the Grady County Law Enforcement center "GCLEC"

Upon information and belief the local government (GCCJA) shall Accept and provide for the secure, custody, safekeeping, housing, subsistance and care of federal detainees in accordance with all state and local laws, standards, resolutions, policies and court orders applicable to the operation of the "GCLEC" facility. Detainee Shall be housed in a manner that is consistant with Federal law and the Federal Performance based - detention standards.

Upon information and belief all defendants, "Commissioners", "GCCJA"

P.13

'GCSO' and/or _____ and/or Keef and/or King and/or Forsythe and/or DOES 1 through 20 Captains, Lieutenants, detention officers, deputies, nurses, doctors, medical, were to a) adhere to all laws and regulations including Intergovernmental Agreement stipulations b) were to put forth an honest effort in their performance, of his/hers duties c) were to provide all detainees including plaintiff with clean, sanitary facilities, daily housekeeping, Noise 45 dba at night d) were to ensure that medical, Dental, and Mental Health Screening were performed by trained, Licensed, health care professionals at 'Intake' e) were to ensure that a greivance procedure is in place and available to all persons f) were to ensure staff permit detainees a minimum of 1 hour of outdoor recreation five days a week g) were to ensure that detainees have reasonable and equitable access to telephones (family/Attorneys) h) were to afford detainees reasonable and equitable access to legal materials and reasonable opportunities to prepare legal materials i) were to provide access to Law Library and/or Free legal Assistance by a trained professional J) Were to ensure that all staff members are trained and the necessary Licensed health care professionals, supplies, equiptment and facilities are available to respond to the medical, dental, and mental health needs of detainees. K) were to ensure detainees are provided the opportunity to communicate with staff either in writing or verbally L) Defendants Gerlach, Keef, King, Forsythe, DOES 1 through 20 were required and did visit plaintiff cell and/or speak to plaintiff and through those interactions and otherwise (e.g picking up complaints and requests to staff using his own paper and carbon) were familiar with events occuring in plaintiffs cell and his concerns and complaints regarding his conditions of confinement, medical care, pain in feet (Arch) mental health. M) Defendants were aware of Mr Felts unconstitutional conditions of confinement.

P14

Approximately 5 hours after leaving the Grady county Transfer center Mr Folts arrived not in springfield missouri as the grady county employee told him she was doing. She lied.

Mr Folts was escorted into the GCLEC and directly into a solitary segregated observation cell by the Female employee who drove him there. Mr Folts was immediately struck by a strong disgusting smell. Mr Folts looked around and seen the walls of the cell had Human Excrement smeared on them and "Feces" splattered on the cieling, dried blood on the Floor, a torn mattress. Mr Folts protested and objected about biens placed in such a unsanitary cell. The Female DOE Defendant told mr Folts " I know its bad but you wont be in here long". Mr Folts requested to be moved and the DOE Defendant denied his request. After several hours Mr Folts was escorted to the booking area to be processed e.g photographed, Fingerprinted, when the Female Detention officer came to Mr Folts cell to get him he protested the unsanitary condition of the cell and the Female DOE Defendant responded "Yeah we know, we had some crazy guy in there who threw his poop all over". After biens processed mr Folts again requested to be moved, the DOE Defendant denied his request and Mr Folts then asked a Lieutenant sitting by the Female detention officers to move him and/or provide him cleaning supplies. The Lieutenant denied Mr Folts request. Mr Folts was not screened nor seen by any medical or mental health care professionals. Mr Folts informed both DOE Defendants he suffers a siezure disorder, is prescribed "Arch supports" for both feet to alleviate pain, takes ibuprofen for a back pain due to air transport, medicine for anxiety,

Two doors led to Plaintiffs cell with a space of approximately 4-5 feet seperating the two. At night Plaintiff was denied sleep due to detention officers bringing in person to strip out

and dress. deprive mr Folts sleep e.g. Walkie Talkies turned up loudly, opening and allowing the outer door to slam shut, talking loudly. Mr Folts asked them if they could lower the noise as it deprived him of sleep and an unknown defendant in response took some object and repeatedly banged it for what seemed a minutes against the door yelling "what did you say i cant hear you". "Speak up" "sleep?" "Did you say you were trying to sleep?") Mr Folts did not sleep and this noise was made each night depriving Mr Folts sleep. July 3,4,5,6,7,8,9,10 2014.

On or about July 3rd and/or 4th and/or 5th and/or 6th and/or 7th and/or 8th and/or 9th and/or 10 2014 Mr Folts made verbal and/or written requests to defendants Weir and/or Gerlach and/or Keef and/or King (Lt) and/or Forsythe and/or numerous DOE Defendants to a) adhere to all laws and resolutions including Intergovernmental Agreement (stipulations) b) to put forth an honest effort in their performance of their duties c) to provide plaintiff a clean sanitized cell d) to provide plaintiff cleaning supplies e) provide plaintiff daily housekeeping f) to move plaintiff to a clean sanitized cell g) to be treated by mental health h) to ensure Mr Folts is Medically screened by trained, Licensed, health care professional i) to ensure Mr Folts is screened by trained, Licensed, Mental health care professional j) to provide plaintiff his "Arch supports" to alleviate pain k) to ensure that plaintiff is provided grievances l) to provide plaintiff recreation to exercise m) to provide a place that has "noise level" conducive for plaintiff to sleep n) o) to be provided access to a law library and the opportunity to prepare court papers and the opportunity to file legal court papers p) to be provided "Notice" and a "Meaningful Hearing" as to why Mr Folts is placed in restrictive, Atypical and Significant, oppresive, segregated confinement, and his opportunity to "contest" biens

placed there and for how long.

q) to be provided access to a telephone to call his Appointed Attorney

r) to be provided responses to his requests

s) to have his requests and complaints investigated

t) to be treated equally and fairly.

As to claims a - t all defendants denied Plaintiffs requests causing pain and injury to plaintiff physically as well as mentally, and constitutionally.

On July 9 2014 Lieutenant Keef stated to Plaintiff "Your not Filing any Law Suits while Your here" This was in response to another request made by plaintiff to be provided access to the law library and or a trained person "learned" in Legal Assistance. Plaintiff explained to Lt Keef he wanted to File a complaint for injunctive relief pertaining to his current conditions of confinement.

On July 9 2014 Lieutenant King in response to Plaintiff asking to speak to Someone from mental health stated "NO, thats not going to happen".

On July 9 2014 Lieutenant Keef stated in response to Plaintiff asking to speak to Someone from mental health "the only way Youll see someone is if You hurt Yourself and even then You may not see any one"

Plaintiff was allowed to physically and mentally detiorate to a point that he attempted to take his own life. Plaintiff was made to live and eat his Food in close proximately to Human Excrement (Feces) on the walls and cieling For several days while bieng deprived

his constitutional courts, his constitutional right to effectively communicate (telephonically) with his appointed attorneys, his constitutional right to basic human needs e.g sanitation, sleep, medical care, including mental healt his constitutional right to be free of unnecessary pain by defendants denying Plaintiff prescribed Arch supports.

The mistreatment of Plaintiff was an instance of this custom, practice, and policy. Defendants subjection of the Plaintiff to this mistreatment was substantially motivated by their refusal to take corrective action to prior instances regarding similar complaints, their refusal to investigate citizen complaints and/or requests to staff regarding their conditions of confinement at "GCLEC", policy of non-feasance in the protection of detainees and Plaintiff civil rights. The systemic mistreatment carried out by an organized group of employees led by senior officer(s) at GCLEC. See Bordanaro v. Mcleod 871 F.2d 1151 (1st cir 1989) (existence of unconstitutional custom inferred from the event itself which involved the joint actions of the Night Watch, thus supporting reasonable inference....... that all of the officers involved were operating under a shared set of rules and customs) By knowingly subjecting Plaintiff to inhumane unconstitutional conditions of confinement at GCLEC, including the transportation (July 10 2014) the individual defendants knowingly participated in the implementation of the custom, practice and policy of mistreating detainees and/or deliberate indifference to their rights

## FACTUAL BACKGROUND
### re "OVERLY TIGHT RESTRAINTS"

On July 10 2014 at approximately 2:00 am Plaintiff was told he was leaving.

Doe Defendants applied hand and leg restraints to mr Fotts before

he was placed on the floor of the van to Springfield Missouri.

A DOE Defendant, standing by the 'opened' side door to the van and who eventually ended up sitting in the front passenger seat during the trip to Springfield denied Mr Folts request to have the hand restraints loosened and/or re-adjusted. Mr Folts showed this defendant how tight and constricting the metal was around his wrists. Mr Folts stated to this doe defendant the pain he felt caused by the tight restraints. DOE Defendant told Mr Folts "Later, set in". Mr Folts then entered the van. Soon the Doe Defendant that would end up driving the van arrived with another passenger. Mr Folts complained to this Defendant regarding the overly tight restraints on his wrists. Mr Folts requested the hand restraints be loosened and/or re-adjusted. The Driver (Doe Defendant) denied Mr Folts request and stated "We've set to so, if you want i can take you back inside and you can wait till next week". He then slammed the door shut.

The van left the 'GCLEC' facility and approximately 45 minutes later the van stopped to buy gas at which time another passenger asked if he could use the restroom at which time the Doe Defendant responded "NO nobody is using the bathroom". Mr Folts informed both defendants that the hand restraints were really hurting him and to please loosen them and re-adjust them. Both DOE Defendants refused denying Mr Folts request.

The van drove non-stop for appx 5 hours. During this time all passengers were denied by Doe Defendants access to relieve themselves. Plaintiff and others were forced to hold their bladders for the 5 hours, which became un-bearable. The van stopped at a rest-stop in Oklahoma at which time the Driver got out and escorted each passenger one by one to the bathroom. Mr Folts again complained to both DOE Defendants his wrists were in a lot of pain and the metal had cut open his wrists and that his hands were numb from loss of circulation. Plaintiff asked both DOE Defendants to please loosen and/or re-adjust the hand-restraints. Both DOE Defendants again denied Mr Folts request. Mr Folts then asked the Driver for some First Aid due to the

open cuts to hispanic
Passenger spoke up complaining that the leg restraints on his ankles were tight
and causing him pain. He then asked both Doe Defendants to loosen and/or re-adjust
his leg restraints. He showed both of Doe Defendants the leg restraints and Mr Folts
also seen how tight the metal was pressing into his ankles. He stated he was
was in a lot of Pain and could not walk to the bathroom. Both Defendants (Doe)
refused and the Doe Defendant in the front Passenger seat said "there's always
2 or 3 of you guys who complain about the 'cuffs' biens too tight".
the van left driving into missouri and arriving at the Federal Facility in
Springfield Missouri around a couple of hours later. Plaintiff was led inside
where a Bureau of Prisons employee Proceeded to take off the hand restraints
on Mr Folts. This employee stated "Damn those are on their tight". As soon as
the hand restraints were removed he looked at them and said "let's get you photographed
and Fingerprinted so the P.A. (Physician Assistant) can look at them. The
P.A then took mr Folts to the sink to rinse the blood off and apply some
ointment and explained to mr Folts that his wrists would need to be treated
and would call "Medical" and that they'd see him as soon as he was done biens
Processed. Mr Folts was then told to go in Ms Durbin office where as soon
as she seen Plaintiffs wrists she asked "How did that happened". Mr Folts
explained and Ms Durbin stated she needed to call the facility's special
investigator (Mr Ramos) who soon arrived with Counselor Gonzalez. S.I.s
Ramos then came with a camera asking mr Folts how the injuries to his
wrists happened. S.I.s Ramos then asked mr Folts to remove his shirt to
look for additionally injuries. He then took several photo's of Plaintiffs wrists.


On July 10 2014, Plaintiff was examined and treated at his housing unit
by registered nurse "Baremore" who documented Plaintiffs wrist injuries and
recorded his pain Assessment at a Severity of 7 out of 10.
Plaintiff was prescribed pain medication by his primary care provider, PA Taylor

On July 10 2014 Plaintiff was treated by Nurse Baremore who cleansed both bilateral wrists and erythema and edema was noted bilaterally, wrists

On July 11 2014, Plaintiff was treated by LPN Kristen Allee who provided Wound care to both of Plaintiffs bilateral wrists

On July 12 2014 Plaintiff was treated by Registered Nurse Karla Fexix who provided wound care cleansing Plaintiffs wrists with microklenz.

On July 12 2014 Plaintiff was treated by Registered Nurse Amanda Lawley who provided wound care to both of Plaintiffs bilateral wrists

On July 13 2014 Plaintiff was treated by Registered Nurse C. cole who provided wound care to both of Plaintiff bilateral wrists.

On July 13 2014 Plaintiff was treated by Registered Nurse Amanda Lawley who Provided wound care to both of Plaintiff bilateral wrists.

On July 14 2014 Plaintiff was treated by Registered Nurse Kn Eay who provided wound care to both of Plaintiffs bilateral wrists,

On July 14 2014 Plaintiff was treated by Registered Nurse A. Addis who provided wound care to both of Plaintiff bilateral wrists,

On July 15 2014 Plaintiff was treated by Registered Nurse cynthia Geisendorfer who provided wound care to both of Plaintiffs bilateral wrists

On July 15 2014 Plaintiff was treated by Registered Nurse A. Addis who provided wound care to both of Plaintiff bilateral wrists.

On July 16 2014 Plaintiff was treated by Registered Nurse cynthia Geisendorfer who provided wound care to both of Plaintiffs bilateral wrists

On July 16 2014 Plaintiff was treated by Registered Nurse Amanda Lawley who Provided wound care to both of Plaintiff bilateral wrists.

On July 17 2014 Plaintiff was treated by Registered Nurse David Flynn who provided wound care to both of Plaintiffs bilateral wrists.

On July 18 2014 Doctor Mahmood Chowdhury documents "bruising on bilateral wrists, very tender, and fresh, wounds present, from hardly applied metal cuffs, Erythema, wrist pain in Joint, Forearm, Lower arm abrasions bruising extensive and circumferential. Very tightly applied for Prolonged Periods.

On July 17 2014 [...] ns and redness present, healing very slowly not overtly draining. minimally and marginally impaired hand function can barely make the "ok" sign with both hands, recent on set from hard metal cuffs

On July 23 2014 it is noted by P.A. Taylor she examined Mr Folts as his primary care provider who documented Musculo skeletal wrist pain and Plaintiffs feeling as if right hand is falling asleep. States also he experiences this with writing (un-comfortable) after writing with his right hand after 5 minutes and doing push ups and has dropped a book feels weakness but is unsure if he would drop heavy objects and says when he moves his right wrist it feels different in comparison to the left wrist. Under "Sensory System" - Yes Parasthesia Eidiculopathy healing Scabs on wrists, current painful condition, pain in Joint, forearm, Re-newing pain medication order, New NON Medication order, left and Right Wrist Splints ordered for both wrists to help with symptoms to be worn most of the time and at nightime during sleep.

Plaintiff had X-rays taken and was subsequently transferred before a Nuerologist (per Dr chaudhury statement to Plaintiff) could be scheduled to see him. Plaintiff continues to be prescribed pain medication and continues to wear his prescribed orthopedic wrist braces.

Plaintiff was seen examined treated by Dr Lea Baecht psychologist regarding the entire Grady County incident. Plaintiff is fearful of employees who apply handcuffs that could further injure him.

Plaintiff has also sought and recieved psychological treatment by Dr davis (ADX) for P.T.S.D regarding Grady county incident and the fear and paranoia caused by Grady county employees refusing to loosen and/or re-adjusting retraints, and biens subjected to in-humane conditions of confinement.

## CLAIMS FOR RELIEF

The actions and omissions described above engaged in under color of state authority by the Defendants Weir, Gerlach, Lt Keef, Lt King, Forsythe, Does 1-20 (including defendant "commissioners", "GCCJA", "GCSD" sved as a person and responsible because of its Authorization, condonation and ratificant

ion of the acts (it's entities) that violated Plaintiff's rights secured to him by the constitution of the United States including but not limited to the Plaintiff a) First Amendment right to access to the courts b) Fifth Amendment right due process. Plaintiff may not be deprived of a liberty interest without due process of law. Defendants placement of Plaintiff in Segregated/solitary confinement cell violated his liberty interest by further imposing upon him Atypical and Significant hardship. Defendants denied Plaintiff his Fifth Amendment when they placed him in solitary without notice and meaningful hearing c) Sixth Amendment right to effective assistance of counsel by the Defendants actions under color of state law violated mr Folts right to the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States constitution as enforceable through 42 U.S.C §1983 by confining mr Folts in Segregated solitary confinement cell restricting mr Folts ability to call his appointed attorney and to participate in his defense in violation of his Sixth Amendment right to effective assistance of counsel. d) EIGHTH AMENDMENT: Deliberate Indifference to Plaintiffs serious medical needs pursuant to the Eighth Amendment to the United States constitution. Shaun Folts had a right to be free from cruel and unusual punishment and to recieve proper medical care ("Arch supports" "wrist injuries") and mental health care and/or treatment while confined in the Grady county Law Enforcement Center and being transported from Grady Grady county Law Enforcement center Shaun Folts suffered serious medical and mental health needs that defendants knew of but disregarded. Shaun Folts had a right to be free from cruel and unusual Punishment and to be provided humane conditions of confinement by ensuring mr Folts recieve the basic necessities of adequate sleep, exercise and Sanitation while confined at Grady county law Enforcement center. Shaun Folts suffered due to Defendants placing him in a un sanitar (Filthy) cell that had Human Excrement (Feces) smeared on the walls splattered on the cieling. Defendants refused to move him, refused him cleaning supplies. Plaintiff was forced to eat and live in proximity to

Feces 24 hours a day July 3,4,5,6,7,8, 9, 2014. Defendants exposed Mr Folts to high level of noise each night by dressing people out right in front of his cell July 3,4,5,6,7,8, 9, 2014 depriving him of sleep. Defendants refused Mr Folts recreation to exercise July 4,5,6,7,8,9, 2014. Under 42 U.S.C § 1983 each of the individual Doe Defendants who participated in the trip from Grady County Law Enforcement Center to Springfield Missouri is Liable to Mr Folts for the injury suffered. Defendants and each one owed Plaintiff a duty to protect him from physical injury. Defendants likewise have a duty not to create dangers that a detainee otherwise would not have faced within their custody. At the time he was injured Mr Folts was not posing any threat. As a result of the misconduct described above Plaintiff experienced pain, suffering, scarring, loss of mobility, physical injury as a result of the conduct described in this complaint. The abuse mr Folts was subjected to was consistant with institutionalized practice the commissioners', GCCJA', GCSD, which was known and ratified by them. Despite that knowledge the defendants took no action to prevent from continuing the misconduct. The failure of defendants to properly investigate citizen complaints, supervise and discipline Doe Defendants to prevent deter punish misconduct, is evidence of defendants authorization, toleration of these institutionalized practices (misconduct). Defendants commissioners', GCCJA, GCSD, failed to establish meaningful system for dealing with complaints of abuse misconduct, non enforcement of policies, and instead just as they do with the allegations above they ignore and deny. The conduct of Commissioners' GCCJA, GCSD' also constitutes gross negligence, As a consequence Mr Folts Sustained damages.

Federal theory of Recovery: (1) First Amendment right to access to the court, (2) Fifth Amendment due process (3) Sixth Amendment effective assistance counsel (4) Eighth Amendment right to be free from cruel and unusual punishment. STATE LAW THEORIES OF RECOVERY Mr Folts Served "notice" on, commissioners which was denied. GCCJA, GCSD, never respond The acts and conduct of state tort (oklahoma) include negligence, gross negligence, breach of contract, PRAYER (1) compensatory and/or General and/or special damages excess of $10,000.00 (2) Punitive damages excess of $10,000.00.   9-7-2015   Shaun Folts
                                                                                                  Date        Shaun Folts