**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **SHAUN FOLTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. CIV-15-996-M** |
| | ) |
| **GRADY COUNTY BOARD OF** | ) |
| **COUNTY COMMISSIONERS, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Shaun Folts, federal prisoner, appearing *pro se* and *in forma pauperis*, brings this action alleging claims arising under state law, and 42 U.S.C. § 1983. Plaintiff has filed a Third Amended Complaint, and to date, has named the following Defendants: Grady County Board of County Commissioners (Commissioners), Grady County Criminal Justice Authority (GCCJA), Grady County Sheriff Jim Weir, Jim Gerlach, Debra Keef, Corwyn King, Eric Forsythe, John Fisher, Kevin Mangus, Jennifer Alger, and Christine Johnson. (ECF No. 127:2). United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C).

Before the Court is a Limited Motion for Summary Judgment filed by Defendants Commissioners, GCCJA, Weir, Gerlach, Forsythe, Keef, and King. **(ECF No. 130)**.[1] The Defendants' Motion addresses the issues of whether Plaintiff: (1) exhausted available

---

[1] The Motion for Summary Judgment appears to have been filed on behalf of the Grady County Sheriff's Department as well. *See* ECF No. 130:1, 23. But the Grady County Sheriff's Department is not a named Defendant in the action.

administrative remedies and (2) met certain pleading requirements of 42 U.S.C § 1997e(e). (ECF No. 130:9-22). In conjunction with the motion, Defendants have also filed a Special Report. (ECF No. 43). Mr. Folts has filed numerous pleadings in response to the Motion for Summary Judgment. (ECF Nos. 155-173). The Court should **DENY** Defendants' Motion for Summary Judgment.

## I.    PLAINTIFF'S FACTUAL ALLEGATIONS AND ISSUES PRESENTED

On June 19, 2014, Mr. Folts arrived at the Federal Transfer Center in Oklahoma City where he stayed until July 3, 2014, when he was scheduled to go to Springfield, Missouri. (ECF No. 127:10). Somehow, Plaintiff missed the bus and was instead driven to the Grady County Law Enforcement Center (GCLEC). (ECF No. 127:11). Plaintiff arrived at the GCLEC on July 3, 2014 and left on July 10, 2014. (ECF No. 127:12, 16).

Upon his arrival, Defendant Johnson escorted Plaintiff into a cell with human feces on the walls and ceiling, dried blood on the floor, and a torn mattress. (ECF No. 127:12). Mr. Folts complained to Ms. Johnson regarding the state of the cell, but she denied his request to be moved. (ECF No. 127:12). Several hours later, Plaintiff complained about the cell's conditions to Defendant Alger, and again requested to be moved. (ECF No. 127:13). Ms. Alger denied the request. (ECF No. 127:13). According to Mr. Folts, he asked another jail official, a "Lieutenant _____" to move him or provide him cleaning supplies, but the requests were denied. (ECF No. 127:13). Mr. Folts told the Lieutenant and Ms. Alger that he: (1) suffered from a seizure disorder, (2) was prescribed arch supports for his feet, and (3) took anxiety medication and ibuprofen for back pain. (ECF No. 127:13). Mr. Folts alleges that he was deprived sleep

for seven nights due to the noise associated with booking inmates, and jail officials turning up their walkie talkies loudly, repeatedly banging on his cell door, and yelling. (ECF No. 127:13).

While at the GCLEC, Mr. Folts alleges deprivation of his constitutional rights involving: access to the courts, sleep, medical care, mental health care, and sanitation. (ECF No. 127:15). Mr. Folts attributes the deprivations to the "custom, practice, and policy . . . carried out by an organized group of employees led by senior officers at GCLEC." (ECF No. 127:15). According to Plaintiff, "the defendants knowingly participated in the implementation of the custom, practice and policy of mistreating detainees and/or bieng [sic] deliberately indifferent to their rights." (ECF No. 127:15).

On July 10, 2014, "Doe Defendants" applied hand and leg restraints to Plaintiff and he was placed inside a van and driven to Springfield, Missouri. (ECF No. 127:15). Defendant John Fisher drove the van and Defendant Kevin Mangus was a passenger. (ECF No. 127:15-16). During the approximately seven-hour ride to Springfield, Mr. Folts repeatedly asked Defendants Mangus and Fisher to loosen or readjust his hand restraints because they were too tight and causing him pain, numbness, and open cuts. (ECF No. 127:15-16). Both Defendants denied the requests. (ECF No. 127:16). At one point, Plaintiff asked Defendant Fisher for first aid to treat the cuts, but Defendant Fisher denied the request. (ECF No. 127:16).

When Plaintiff arrived at the Federal Medical Center in Springfield, a Bureau of Prisons employee sent Plaintiff to be examined and photographed by a physician's assistant to treat and document the injury to Plaintiff's wrists. (ECF No. 127:17). The PA

rinsed dried blood from Mr. Folts' wrists and applied ointment to his cuts. (ECF No. 127:17). A BOP employee photographed the wrist injuries. (ECF No. 127:17). From July 10, 2014 to July 23, 2014, BOP officials treated Mr. Folts' wrist injuries and documented bruising, edema, erythema, and wrist pain which they attributed to the tight hand restraints. (ECF No. 127:17-19). Plaintiff was given wrist splints, pain medication, and psychological treatment as a result of the physical injury and mental trauma caused by the restraints. (ECF No. 127:19).

In his Third Amended Complaint, Plaintiff alleges officials at the GCLEC: (1) violated the Eighth Amendment through a denial and delay of medical and mental health care, (2) violated the Eight Amendment and the Intergovernmental Agreement by subjecting him to inhumane conditions of confinement, (3) violated the Fourteenth Amendment through denying him an opportunity to grieve his conditions of confinement, (4) denied him access to a law library, and (5) violated the Eighth Amendment through excessive force in failing to loosen or readjust the hand restraints. (ECF No. 127:19-24 ). Plaintiff sues all Defendants in their official and individual capacities and seeks compensatory, punitive, and nominal damages. (ECF No. 127:5, 24).

Defendants Commissioners, GCCJA, Weir, Gerlach, Forsythe, Keef, and King have filed a Motion for Summary Judgment alleging that Plaintiff: (1) failed to exhaust available administrative remedies and (2) failed to sufficiently allege "physical injury" as required by 42 U.S.C § 1997e(e). (ECF No. 130).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties may establish the existence or nonexistence of a material disputed fact through:

- submission of "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or"

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). The cited evidence should be viewed "in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

When a defendant asserts an affirmative defense—such as the failure to exhaust administrative remedies—in a motion for summary judgment, he or she "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted when the evidence is viewed in the light most favorable to [Plaintiff]." *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F. 3d 726, 746 (10th Cir. 2014) (internal quotation marks and citation omitted). If the defendant satisfies this burden, the plaintiff would incur a duty to "demonstrate with specificity the existence of a disputed material fact" or "show that remedies were unavailable to him as a result of" the actions of prison officials. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997); *Tuckel v. Grover*,

660 F.3d 1249, 1254 (10th Cir. 2011). In the absence of either showing, the defendant would be entitled to summary judgment on the affirmative defense. *See Tuckel* at 1254.

## III.   EXHAUSTION

In part, Defendants argue that Plaintiff's lawsuit is barred because he failed to exhaust administrative remedies with respect to the claims asserted in the Third Amended Complaint. Mr. Folts admits that he did not exhaust administrative remedies per GCLEC policy, but suggests that remedies were unavailable. To properly evaluate this issue, the Court must examine the relevant administrative procedure, determine whether it was "available" to Plaintiff, and analyze Plaintiff's attempts at exhaustion.

### A.      The Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) requires a prisoner to exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

An inmate, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the facility grievance procedure. *Id.* at 218. Exhaustion must occur prior to the prisoner bringing a lawsuit on his claims. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "An inmate who

begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Id.* "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). However, courts "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir. 2007).

### B.    The Relevant Grievance Process

When determining whether administrative remedies have been exhausted, the Court must look to the grievance process at the institution where the inmate is confined. Plaintiff was confined at the Grady County Law Enforcement Center and the Defendants attach the relevant policy to the Motion for Summary Judgment. *See* ECF No. 130-2.

The GCLEC grievance policy first requires an initial, informal attempt to resolve the issue followed by a two-part formal attempt. Attempting an informal resolution starts by the inmate "talking with a responsible authority or other appropriate staff member." Next, the offender must file a Request to Staff within 48 hours of the alleged incident. After exhausting these attempts, the inmate may file a formal grievance. Grievance forms are obtained from the "Pod office" and the grievance must be filed within 15 days of the alleged incident. (ECF No. 130-2).

## C. Defendants' Arguments/Evidence Regarding Exhaustion

Relevant to the issue of exhaustion, Defendants assert the following "undisputed facts":

1. The Inmate Grievance Procedure at the GCLEC requires inmates to: (1) seek informal resolution through verbal communication, (2) submit a "Request to Staff" form within 48 hours of the incident, and (3) upon receipt of an unsatisfactory response to a written "Request to Staff," to file a written grievance within 15 days of the alleged incident.

2. On July 7, 2016, Plaintiff requested and was provided a grievance form.

3. At no time during or after his incarceration at the GCLEC did Plaintiff submit a written grievance pertaining to any of the allegations in his Third Amended Complaint.

4. The August 12, 2014 "Citizen Complaint" mailed by Plaintiff to GCLEC outlining his complaints regarding his stay at GCLEC was not a grievance and was mailed 18 days outside the time allowed to file a grievance per jail policy.

(ECF No. 130:11-13). In support of their exhaustion argument, Defendants present a sole piece of evidence—a printout from the GCLEC which states that on July 7, 2014, following a request from Plaintiff, jail official Darren Perske provided Mr. Folts with a grievance form. (ECF Nos. 130:12 & 43-9). Defendants maintain that Mr. Folts never completed or returned the form. (ECF No. 130:12).

Defendants also argue that Plaintiff is now time-barred from exhausting his administrative remedies. But this argument hinges on whether, in the first instance, Plaintiff had an "available" remedy to exhaust. The evidence proves that Mr. Folts did not have an available remedy to exhaust, rendering it unnecessary to address Defendants' timeliness argument.

### D. Plaintiff's Arguments/Evidence Regarding Exhaustion

In response to the Motion for Summary Judgment, and relevant to the issue of exhaustion, Mr. Folts submits: (1) an "Opposition to Defendants Motion for Summary Judgment" (ECF No. 155); (2) a "Statement of Disputed Factual Issues" regarding the Defendants' "undisputed facts" (ECF No. 157), and (3) multiple sworn statements/declarations (ECF Nos. 159-173). In these pleadings, Mr. Folts admits that he did not exhaust his administrative remedies, but argues that the failure was due to various types of interference from GCLEC officials. As a result, Mr. Folts argues that GCLEC's grievance procedure was effectively "unavailable" to him and he should be excused from the PLRA's exhaustion requirement. The Court should agree.

### Plaintiff's Efforts at Exhaustion and Alleged Interference from Jail Officials

Mr. Folts makes several allegations, under penalty of perjury,[2] regarding his attempts to properly make his complaints known while at the GCLEC. First, Mr. Folts submits that: (1) per jail policy, grievance forms were only available in the "Pod Office" to which he had no access and (2) he tried, without success, to verbally resolve various issues and obtain Request to Staff and grievance forms. (ECF Nos. 155:3-6; 157:4; 161-172). According to Plaintiff, the underlying issues were not resolved and prison officials denied Mr. Folts the requested forms. (ECF Nos. 155:3-4; 161-172). Mr. Folts provides the Court with the following specific examples of his attempts to follow the administrative grievance procedure:

---

[2]  Affidavits or sworn statements submitted under the penalty of perjury are acceptable forms of evidence to be used at the Summary Judgment stage. *See* Fed. R. Civ. Pro. 56(c).

| Date | Individual to whom Plaintiff made the request | Nature of the Request | Result | ECF Doc. No. |
|------|------|------|------|------|
| July 9, 2014 | Defendant Keef | Cleaning supplies; Request to Staff and grievance forms; deprivation of sleep; unsanitary conditions; medical and mental health treatment; no exercise; no telephone; access to law library | Denied | 155:3; 161 |
| July 8, 2014 | "Doe" Employee | Noise/sleep deprivation; Request to Staff and grievance forms; mental health treatment | Denied; Plaintiff was given a "Federal Detainee Form;" told he could use in lieu of a grievance, but it was not responded to | 155:3; 162 |
| July 7, 2014 | Employee Smith | Mental and medical health care; Request to Staff and grievance forms | Denied | 155:3; 163 |
| July 7, 2014 | Employee Perske | Cleaning supplies and exercise; Request to Staff form | Perske arrived with the form, but was dissuaded from giving it to Plaintiff by another jail employee | 155:3; 164 |

| July 4, 2014 | Employee Valazquez | Prescribed arch supports; medical health care request form; Request to Staff and grievance forms | Denied | 155:3; 165 |
|---|---|---|---|---|
| July 4, 2014 | Employee Owings | Access to legal materials; Request to Staff and grievance forms | Denied; given "Federal Detainee Form" on which Plaintiff complained about unsanitary conditions, no arch supports, no access to legal materials | 155:3; 166 |
| July 3, 2014 | Defendants Alger and Hamilton | Unsanitary conditions; cleaning supplies; arch supports; Request to Staff and grievance forms | Denied | 155:3; 167 |
| July 3, 2014 | Defendant Johnson | Unsanitary conditions; Request to Staff and grievance forms | Denied | 155:3; 168 |
| July 9, 2014 | Defendants King, Forsythe, and Keef | Deprivation of sleep; mental health treatment; Request to Staff and grievance forms | Denied | 155:3; 169 |
| July 9, 2014 | Defendant Keef | Mental health treatment; Request to Staff and grievance forms | Denied | 155:3; 170 |

| July 10, 2014 | Defendants Mangus and Fisher | Tight Handcuffs; Request to Staff and grievance forms | Denied | 155:3, 7; 157:6; 171; 172 |
|---|---|---|---|---|

In the sworn statements, Plaintiff also maintains he was told that due to his status as a federal detainee, he could not use "County" forms. (ECF No. 157:3). As a result, Plaintiff states jail officials gave him "Federal Inmate Detainee" forms to document his complaints, but he was later told those forms would not suffice as proper grievance forms, per jail policy. (ECF Nos. 155:5; 157:3; 162; 166). As a result, Mr. Folts states that he submitted written grievances using his own "paper and carbon." (ECF Nos. 164; 166).

As evidence, he submits copies of six handwritten "Request/Complaints" dated July 4, 2014, July 4, 2014, July 5, 2014, July 7, 2014, July 8, 2014 and July 9, 2014, submitted to "Medical," and Defendants Weir and Gerlach. (ECF Nos. 173-1:23, 25, 27, 29, 31, 33). The documents request arch supports, recreation, access to a law library, mental health treatment, anxiety medication, cleaning supplies, request to staff and grievance forms, and complain of the overall unsanitary conditions in his cell. (ECF Nos. 173-1:23, 25, 27, 29, 31, 33). After leaving the GCLEC, Plaintiff states that he still attempted to exhaust his administrative remedies by writing a letter to Defendant Gerlach on July 11, 2014 and then to "Internal Affairs" on August 12, 2014. (ECF Nos. 155:7, 9; 157:5, 6; 171).

### E.    Administrative Remedies were Unavailable to Mr. Folts

Despite the mandatory language of the PLRA, the plain language of the statute offers one textual exception—the administrative remedies must be "available" to the

prisoner. *See* 42 U.S.C. § 1997e(a). Recently, the United States Supreme Court has expounded on the definition of what constitutes an "available remedy" and provided three examples of circumstances in which a remedy is considered "unavailable." *See Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016). In *Ross*, the Court stated that a remedy is "available" to an inmate if it is "capable of use to obtain some relief for the action complained of." *Id.* In turn, a remedy would not be considered "available" in three circumstances.

First, if the procedure operates as a "dead end," it is not considered available. *Id.* For example, if a grievance policy directs inmates to submit their grievances to a particular office, but in practice, that office is without the capacity to consider the grievances, the procedure is not "capable of use." *Id*. Such is the case where prison officials have "apparent authority, but decline to ever exercise it." *Id.*

Second, if an administrative remedy is so opaque, that, practically speaking, it becomes incapable of use because no ordinary prisoner can navigate it, the procedure is considered "unavailable." *Id.* at 1859-1860.

Finally, an administrative remedy is considered "unavailable" when prison officials thwart an inmate's attempt to take advantage of a grievance process "through machination, misrepresentation, or intimidation." *Id.* at 1860.[3]

Here, the Court should conclude that the first and third exceptions apply, rendering the exhaustion procedure unavailable to Mr. Folts.

---

[3] *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.") (citation omitted).

Due to his locked up status, Mr. Folts maintains that he did not have access to the "Pod Office" where grievance forms were kept, so he had to rely on jail officials to supply him the forms. (ECF Nos. 155:3-6; 157:4; 161-172). Defendants present evidence that on July 7, 2014, GCLEC official Darren Perske provided Mr. Folts with a grievance form. (ECF Nos. 130:12 & 43-9). But according to Defendants, Mr. Folts never completed or returned the form. (ECF No. 130:12; 130-1).

Plaintiff disputes this fact, stating:

> I requested from employee Perske a request to staff form. Employee Perske left and returned with another employee. Employee Perske had a grievance in his hand. "NOT A REQUEST TO STAFF FORM." Before employee Perske could issue me the grievance form the other employee stopped him. Both employees left and employee Perske did not come back. Even though employee Perske [sic] actions did not comply with GCCJA/GCLEC procedures (Administrative remedy process), he could of [sic] still corrected it but didn't.

(ECF No. 164:1). In addition to this sworn statement, Plaintiff submits a copy of a "Request/Complaint" dated July 7, 2014, submitted to Defendants Weir and Gerlach which stated: "One officer tried to give me a grievance but said if he did he'd get in trouble (?)." (ECF No. 173-1:29). Through this evidence, Plaintiff has created an issue of material fact regarding Defendants' contention that Mr. Perske gave Plaintiff the grievance form, thereby offering him an "available" administrative remedy. Based on Plaintiff's evidence, one plausible scenario is that Mr. Perske printed off the form, logged the print off in the system, went to Plaintiff's cell intending to give him the form, and as alleged by Mr. Folts, failed to do so. This disputed factual issue prevents summary judgment on Defendants' exhaustion claim.

Alternatively, Defendants state: "assuming *arguendo*, no form was provided, as Plaintiff alleges, submitting a request to staff or filing a written grievance was still accessible to him. He clearly had access to writing papers and materials . . .[y]et the GCLEC did not receive a written grievance during that time." (ECF No. 130:20). Apparently, Defendants believe that Mr. Folts still had an available administrative remedy—despite the Plaintiff's lack of proper forms. But Defendants' own evidence and Plaintiff's sworn statements suggest otherwise.

According to jail policy, inmates must file a "Request to Staff" form prior to filing a formal grievance. The policy also states that "[a] formal grievance is a formal complaint by the inmate using the inmate grievance report form after exhausting informal attempts to resolve issues." Finally, the policy indicates that the grievance forms "are obtained from the Pod Office." (ECF No. 130-2). These statements indicate that particular forms were to be used in utilizing the administrative remedy procedure. Further underscoring this fact are Mr. Folts' statements that he attempted to use "Federal Detainee Forms" to assert grievances, as well as his own "paper and carbon," but that neither method was accepted, as indicated by the lack of response. (ECF Nos. 155:5; 157:3; 162; 164; 166).

Mr. Folts attempted to utilize the proper administrative remedy process, as well as an alternative means for exhausting his claims. Even though Defendants present evidence that Plaintiff was offered a means of exhausting his remedies, Plaintiff presents evidence which disputes this fact. Furthermore, the evidence establishes that Plaintiff's attempts to exhaust his administrative remedies were ignored, refused, and

otherwise prevented through the actions of jails officials. Mr. Folts was met with a "dead end" in attempting to exhaust his administrative remedies and has presented evidence that jail officials thwarted his efforts-the very type of conduct condemned by the Supreme Court and effectively rendering an administrative remedy unavailable to Mr. Folts. On this basis, the Court should conclude that Defendants have failed to carry their burden and deny summary judgment on grounds of non-exhaustion.

## IV.    THE PHYSICAL INJURY REQUIREMENT OF 1997e(e)

Alternatively, Defendants seek dismissal of all of Plaintiff's claims seeking money damages for failure to satisfy the "physical injury" requirement of the PLRA which states: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See* ECF No. 130:24-28.

In his Complaint, Plaintiff alleges officials at the GCLEC: (1) violated the Eighth Amended through a denial of medical and mental health care (2) violated the Eighth Amendment through a failure to loosen or readjust his handcuffs, (3) violated the Eighth Amendment and the Intergovernmental Agreement through subjecting him to inhumane conditions of confinement, (4) violated the Fourteenth Amendment by not allowing him to grieve his conditions of confinement, and (5) denied him access to a law library. (ECF No. 127).

### A.     Denial of Medical and Mental Health Care Treatment

Plaintiff alleges a denial of medical and mental health care through the failure to: (1) provide prescribed arch supports for seven days, (2) apply first aid to his wrists during the van ride to Springfield, and (3) provide prescribed anxiety medication, and other mental health screening/treatment.

First, Plaintiff alleges that upon entering the GCLEC, jail officials took his prescribed arch supports and he was without them for seven days, which caused him pain. (ECF No. 127:13-14; 156:3-5). Physical pain, standing alone, is a *de minimis* injury that may be characterized as a mental or emotional injury and, accordingly, fails to overcome the PLRA's bar; but, when paired with allegations of physical effects, physical pain may support a claim under the PLRA. *Mata v. Saiz,* 427 F.3d 745, 755 (10th Cir. 2005); *Sealock v. Colorado,* 218 F.3d 1205, 1210 (10th Cir. 2000). Plaintiff alleges that without his arch supports he "was unable to exercise for 7 days, which exacerbated his mental illness." (ECF No. 156:5). But Plaintiff does not allege any other physical injury owing to the lack of arch supports or the deprivation of exercise. Thus, the Court should conclude that under § 1997e(e), Mr. Folts is not entitled to recover compensatory damages for this claim. However, the PLRA does not bar recovery of punitive damages or nominal damages. *See Searles v. Van Bebber,* 251 F.3d 869, 881 (10th Cir. 2001)*; Perkins v. Kansas Dep't of Corrs.,* 165 F.3d 803, 808 n.6 (10th Cir. 1999). Thus, Mr. Folts' claim for denial of medical care through deprivation of prescribed arch supports may proceed to the extent he seeks nominal and punitive damages for such claim.

Second, Plaintiff alleges that during the van ride to Springfield, he informed Defendants Fisher and Mangus that he was experiencing numbness, pain, and open cuts on his wrists due to the hand restraints, and as a result, he asked for first aid. (ECF No. 127:16). Mr. Folts states that the Defendants refused to loosen the restraints or to apply first aid. (ECF No. 127:16). Plaintiff alleges that upon arriving at the prison in Springfield, officials there removed the hand restraints and treated the cuts by applying ointment, and providing pain medication and wrist splints. (ECF No. 127:17-19).

Indeed, Plaintiff has presented photographic evidence which shows cuts to his wrists as well as Bureau of Prisons medical records from July 10, 2014 to July 25, 2014 which state that Plaintiff suffered from bruising, erythema, and edema due to "Hard metal cuffs, very tightly applied for prolonged periods." (ECF No. 173-1:105, 107, 113, 123). Plaintiff also presents evidence which documents his complaints of wrist numbness and weakness and an inability to comfortably write and hold a book, as well as medication prescribed for the wrist pain. (ECF No. 173-1:135, 147). Thus, on the claim regarding denial of medical care through the failure to loosen the hand restraints, the Court should conclude that Plaintiff has alleged, as well as presented evidence, which is sufficient to satisfy the "physical injury" requirement of § 1997e(e).

Third, Plaintiff alleges that GCLEC officials failed to provide him with proper mental health care treatment by denying his prescribed anxiety medication, Sertraline, as well as denying him mental health treatment, despite Plaintiff's numerous requests. (ECF Nos. 127:14, 21, 22; 155:3; 156:4; 161-163; 169; 170). Plaintiff contends that

without his medication, he experienced panic attacks and attempted suicide. (ECF Nos. 127:14-15; 156:4).

Mr. Folts does not allege that the panic attacks resulted in physical injury to him. The panic attacks and suicide attempt are insufficient to overcome the "physical injury" requirement of § 1997e(e). *See Hughes v. Colo. Dep't of Corr.,* 594 F. Supp.2d 1226, 1238 (D. Colo. 2009) (citations omitted) (noting that physical manifestations of depression and anxiety "cannot support claims for damages pursuant to 42 U.S.C. § 1997e(e)"); *Banks v. Katzenmeyer*, No. 13-CV-02599-KLM, 2015 WL 1004298, at *13 (D. Colo. Mar. 4, 2015), *aff'd in part, rev'd in part,* 645 F. App'x 770 (10th Cir. 2016) (allegations of panic attacks, which resulted in chest pains, were insufficient to overcome the hurdle of 1997e(e) because "[a] straightforward reading of Section 1997e(e) requires that a prisoner cite a physical injury that is *separate* from mental and emotional injuries he may have suffered.") (emphasis added & citation omitted). Accordingly, the Court should dismiss any claims for compensatory damages related to the alleged denial of Sertraline or mental health treatment.

**B.     Excessive Force**

Mr. Folts alleges a violation of the Eighth Amendment's prohibition against cruel and unusual punishment through the use of excessive force due to the failure of Defendants Fisher and Mangus to loosen or readjust Plaintiff's hand restraints. (ECF No. 127:15-19). For the reasons discussed above, the Court should conclude that Mr. Folts has sufficiently alleged physical injury resulting from the tight hand restraints and should be allowed to proceed on this claim for compensatory damages.

### C.  Conditions of Confinement

Mr. Folts alleges that he was subjected to inhumane conditions of confinement including: (1) deprivation of sleep, (2) deprivation of exercise, and (3) living in a cell for seven days with human feces and dried blood. (ECF No. 127:7, 12, 13, 15).[4] According to Defendants, Plaintiff has failed to identify any physical injury resulting from these conditions, preventing compensatory damages on these claims. Defendants are correct.

### Deprivation of Sleep

Mr. Folts alleges that during his stay the GCLEC, he was "denied sleep due to detention officers bringing in persons to strip out and dress. The employees created noise at levels to deprive Mr. Folts' sleep, e.g., walkie talkies turned up loudly, opening and allowing the outer door to slam shut, talking loudly." (ECF No. 127:13). These allegations are insufficient to withstand the "physical injury" requirement of 1997e(e) to receive compensatory damages. *See Laratta v. Raemisch*, No. 12-CV-02079-MSK-KMT, 2014 WL 1237880, at *7 (D. Colo. Mar. 26, 2014) (plaintiff's conclusory allegations of sleep deprivation while in segregation, without more, were insufficient to withstand the physical injury requirement of the PLRA, barring compensatory damages). As a result, Mr. Folts is unable to recover compensatory damages for this claim under the PLRA, but is not barred from recovering nominal or punitive damages. *See Searles v. Van Bebber,* 251 F.3d 869, 881 (10th Cir. 2001); *Perkins v. Kansas Dep't of Corrs.,* 165 F.3d 803, 808 n.6 (10th Cir. 1999).

---

[4]  Although Defendants identify a denial of telephone access as one of Plaintiff's conditions of confinement claims, Plaintiff clarifies that he is not asserting a claim for "inadequate mail or telephone use." (ECF No. 157:6).

## Deprivation of Exercise

Mr. Folts alleges that he was deprived of exercise/outdoor recreation during his seven days at the GCLEC. (ECF No. 127:14, 22; 155:3; 156:4-5; 161; 164). But as alleged by Defendants, Mr. Folts makes no allegations that the deprivation resulted in any physical injury, only that it was a "basic human need." (ECF No. 156:5). These allegations are insufficient to sustain a claim for compensatory damages under the PLRA. *See Oakley v. Zavaras*, No. 10-CV-03052-CMA-MJW, 2012 WL 1044591, at *10 (D. Colo. Feb. 23, 2012) ("because plaintiff did not allege any physical injury as a result of the denial of outdoor exercise . . . he would be unable to recover compensatory damages pursuant to 42 U.S.C. § 1997e(e)"). But a claim for nominal and punitive damages due to the lack of exercise is not necessarily foreclosed.

## Unsanitary Conditions

Plaintiff alleges that for seven days at the GCLEC, he lived and ate his meals in a cell with human feces on the walls and ceiling and dried blood on the floor. (ECF Nos. 127:12-13; 156:1). According to Mr. Folts, the unsanitary conditions "expos[ed] him to infectious diseases and endanger[ed] his health and safety." (ECF No. 127:7, 15). Plaintiff may have a viable Eighth Amendment claim based on conditions of confinement for which he may recover punitive or nominal damages. But as discussed, Plaintiff's allegation of mere "exposure" to conditions which placed his health at risk, absent any *actual* physical injury, is insufficient. *See Witmer v. Grady Co. Jail*, 2011 WL 4578453, at *2 (adopting recommendation to deny Plaintiff's Eighth Amendment claim based on alleged unsanitary jail conditions and additionally noting "no allegation that Plaintiff

suffered a physical injury that might satisfy the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e)"). Accordingly, the Court should dismiss the Eighth Amendment claim seeking compensatory damages which is premised on unsanitary conditions.

## D.    Access to the Courts

Mr. Folts alleges that jail officials violated his right to access the court by not allowing him access to a law library. (ECF No. 127:14; 155:3; 161; 166).[5] Defendants argue that this claim should be dismissed for failure to allege "actual injury." (ECF No. 130:28). In the Third Amended Complaint, Mr. Folts stated that he sought access to a law library "so he could prepare for and submit a civil complaint for injunctive relief regarding his conditions of confinement" at the GCLEC. (ECF No. 127:14). And in response to Defendants' Motion for Summary Judgment, Mr. Folts states:

> Defendants policy and employees prevented Mr. Folts from meaningful access to the court. Defendants policy and employees prevented Mr. Folts from filing a civil complaint for injunctive relief with the U.S.D.C. which kept Mr. Folts from communicating to a Judge, courts, about the unconstitutional conditions that endanger [sic] his health and safety.  As a result the Defendants policy and employees prevented Mr. Folts from filing legal papers they made any relief from the conditions complained about "unavailable" subjecting Mr. Folts to additional injury that he was already bieng [sic] subjected to[.]

(ECF No. 157:6).

The right of access to the courts is a fundamental constitutional right. *Bounds v. Smith,* 430 U.S. 817, 828 (1977). An inmate alleging denial of access to the courts must

---

[5]  Mr. Folts asserts a separate, yet related claim, involving a deprivation of procedural due process through a denial of request to staff and grievance forms. (ECF No. 127:13-15; 155:3; 161-172). But Defendants do not address that claim in their Motion for Summary Judgment.

allege an actual injury. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." Here, Mr. Folts has alleged that he was denied access to the courts to pursue injunctive relief regarding his conditions of confinement at the GCLEC. At this juncture, the Court cannot determine whether those claims have merit. If they do, then Mr. Folts' pursuit of an injunction would not have been frivolous, and he can prove actual injury. But according to Plaintiff, Defendants prevented him from seeking injunctive relief by denying him access to a law library while at the GCLEC. At this stage, the Court concludes that Mr. Folts has sufficiently alleged a claim for denial of access to the Courts. Whether he can ultimately prove "actual injury" is yet to be determined.

## V.      SUMMARY OF RECOMMENDATIONS

The Court should **DENY** Defendants' Motion for Summary Judgment on grounds of non-exhaustion and **DISMISS** Mr. Folts' claims for compensatory damages based on: (1) unsanitary conditions of confinement, (2) deprivation of sleep, (3) deprivation of exercise, (4) denial of arch supports, and (5) denial of anxiety medications and mental health treatment. However, Plaintiff may maintain a cause of action for nominal and punitive damages on these claims.

On the claims involving a denial of medical care and excessive force due to tight hand restraints, the Court should conclude that Mr. Folts has sufficiently alleged "physical injury" and has, therefore, stated a valid claim for nominal, compensatory and punitive damages. Finally, the Court should conclude that Mr. Folts has adequately

stated a claim for denial of access to the courts. The undersigned recognizes, but makes no findings on Mr. Folts' procedural due process claim based on a denial of grievance forms at the GCLEC, as this claim was not included Defendants' Motion for Summary Judgment.

## VI. NOTICE OF RIGHT TO OBJECT

Plaintiff is hereby advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **November 21, 2016**. *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VII. STATUS OF THE REFERRAL

This Report and Recommendation does not dispose of all issues currently referred to the undersigned magistrate judge in the captioned matter.

ENTERED on November 2, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE