IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAUN FOLTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-00996-JD |
| | ) |
| GRADY COUNTY BOARD OF COUNTY COMMISSIONERS, GRADY COUNTY CRIMINAL JUSTICE AUTHORITY, JIM GERLACH, LIEUTENANT KEEF, LIEUTENANT KING, ERIC FORSYTHE, DOES 1–20, JIM WEIR, JOHN FISHER, KEVIN MANGUS, JENNIFER ALGER, and CHRISTINE JOHNSON, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is United States Magistrate Judge Shon T. Erwin's Report and Recommendation ("R&R") [Doc. No. 391] on a Motion for Summary Judgment ("Motion") [Doc. No. 381] filed by Defendants Grady County Board of County Commissioners ("Board") and Grady County Criminal Justice Authority ("GCCJA") (together, "Municipal Defendants"). The R&R recommends that the Court grant the Motion and enter judgment in favor of the Municipal Defendants on Plaintiff Shaun Folts's claim for municipal liability under 42 U.S.C. § 1983. Mr. Folts timely filed an objection to the R&R [Doc. No. 394], and the Court therefore conducted a de novo review of the portions of the R&R to which he objected, as required by 28 U.S.C. § 636(b)(1)(C). Having concluded that review, and for the reasons discussed below, the Court accepts and adopts the R&R, as modified herein, and grants the Motion.

I.    RELEVANT BACKGROUND

A.    **Plaintiff's Allegations**

Plaintiff Shaun Folts, a federal prisoner proceeding pro se, filed this action more than five years ago, asserting numerous claims against the Municipal Defendants and others for incidents occurring during Mr. Folts's one-week stay at the Grady County Law Enforcement Center ("GCLEC" or "jail") from July 3 to July 10, 2014. The present Motion is limited to Mr. Folts's claim that the Municipal Defendants are liable under § 1983 for subjecting him to inhumane conditions of confinement in violation of the Eighth Amendment.

In his verified Third Amended Complaint [Doc. No. 127], Mr. Folts alleges that his cell at the jail had feces and dried blood splattered on the walls, ceiling, and floor and that jail employees—including jailer Jennifer Alger and jail administrator Jim Gerlach— knew of these conditions but denied his requests for cleaning supplies, in violation of the Eighth Amendment. *See* Third Am. Compl. [Doc. No. 127] at 7, 12–14. Based on these allegations, Mr. Folts brought § 1983 claims against Alger, Gerlach, and other jail employees[1] in both their individual and official capacities and against Gerlach for supervisory liability. *Id.* at 21–22.

Mr. Folts also sought to hold the Municipal Defendants liable under § 1983 on the grounds that their customs, practices, and policies—specifically, their "fail[ure] to

---

[1] The other jail employees implicated in Plaintiff's conditions-of-confinement claim were Defendants Eric Forsyth, Debra Keef, and Corwyn King. The Court previously granted summary judgment to these defendants. *See* Order [Doc. No. 304].

prevent, deter, correct, and punish employees"—created a climate that allowed the underlying constitutional violation to occur. *Id.* at 22. According to Mr. Folts, the Municipal Defendants were aware of similar prior violations (evidenced by other prisoner lawsuits) but failed to take corrective action. *See id.* at 8–10, 15.

B. **Prior Relevant Dispositive Rulings**

In April 2017, Alger and Gerlach moved for summary judgment on Mr. Folts's conditions-of-confinement claim, arguing that the official capacity claims were tantamount to claims against Grady County and that they were entitled to qualified immunity on the individual capacity claims. *See* Mot. [Doc. No. 263]. United States District Judge Vicki Miles-LaGrange[2] adopted an R&R issued by Magistrate Judge Erwin, recommending that the Court grant the motion in part and deny it in part. *See* Order [Doc. No. 304] *adopting* R&R [Doc. No. 294]. Specifically, Judge Erwin recommended that the Court grant Alger and Gerlach summary judgment on Mr. Folts's official capacity claims because those claims were duplicative of claims against the Municipal Defendants. Judge Erwin found that Mr. Folts's allegations of exposure to feces and dried blood presented "sufficiently serious" circumstances to invoke the Eighth Amendment, considering Mr. Folts's allegation that he asked for but was denied cleaning supplies. *See* R&R [Doc. No. 294] at 20. However, Judge Erwin concluded that Gerlach was still entitled to summary judgment on Mr. Folts's individual capacity claim

---

[2] This case was later reassigned to the Honorable Scott L. Palk on January 4, 2019 [Doc. No. 360], before being transferred to the undersigned on December 26, 2019 [Doc. No. 395].

3

because Mr. Folts had not met his burden to show that Gerlach knew of and disregarded an obvious risk concerning Mr. Folts's conditions of confinement. *See id.* at 21–22. Likewise, Judge Erwin found that Gerlach could not be found liable in a supervisory capacity because the grievance policy Gerlach allegedly did not enforce was not the cause of the complained of constitutional harm. *Id.* at 23–24. With respect to Alger, however, Judge Erwin found that the verified allegations in Mr. Folts's Third Amended Complaint and Mr. Folts's deposition testimony raised a genuine dispute about whether Alger had acted with deliberate indifference. *See id.* at 24–26. Judge Erwin therefore recommended that the Court deny summary judgment to Alger on Mr. Folts's individual capacity claim involving conditions of confinement. *Id.* at 26.

The Municipal Defendants also previously sought summary judgment. The GCCJA argued that it was entitled to summary judgment on Mr. Folts's municipal liability claim because Mr. Folts could show neither a violation of his constitutional rights nor that the violation was caused by a municipal policy or custom. *See* Mot. [Doc. No. 263] at 19–32. The Board in turn argued that it was entitled to summary judgment because it was not a proper party. *See* Mot. [Doc. No. 262] at 11–12. The Board's contention was (and apparently remains) that the GCCJA is responsible for the operation, maintenance, and administration of the jail and that any claim for municipal liability against the county should therefore be brought against the GCCJA, not the Board. [*See id.*].

Judge Miles-LaGrange rejected the Board's improper party argument, finding that the correct way to sue Grady County was to bring an action against the Board. *See* Order

4

[Doc. No. 282] at 2 *adopting in part* R&R [Doc. No. 280]. Based on this conclusion, Judge Miles-LaGrange dismissed Mr. Folts's claims against the GCCJA as duplicative without considering the substantive arguments the GCCJA had made in its summary judgment motion. *See* Order [Doc. No. 304] *adopting* R&R [Doc. No. 294]. Judge Miles-LaGrange later reconsidered her dismissal of Mr. Folts's claims against the GCCJA, however, and recommitted the matter to Judge Erwin to consider the substantive arguments on liability made in the GCCJA's motion for summary judgment. *See* Order [Doc. No. 335] at 2. On recommittal, Judge Erwin ordered the Municipal Defendants to file a combined motion for summary judgment "limited to arguing the liability of either entity on the sole remaining claim against Defendant Alger." Order [Doc. No. 378] at 2–3.

At this juncture, the Court pauses to clarify two issues. First, and as Judge Erwin notes in the R&R now under review, Mr. Folts's remaining claim against Alger is for actions taken in her individual capacity. Strictly speaking, the Municipal Defendants have no liability on that claim; their liability, if any, must be based on the existence of an official policy or custom that resulted in a constitutional violation, as set forth in *Monell v. Department of Social Services of the City of N.Y.*, 436 U.S. 658 (1978). All parties appear to recognize this distinction, and the Court notes it only to clarify the record.

Second, it is not correct that Mr. Folts's conditions-of-confinement claim is the only remaining claim in this lawsuit. In the Third Amended Complaint, Mr. Folts also asserted a claim under Oklahoma's Governmental Tort Claims Act ("GTCA") for injuries allegedly caused by tight hand restraints applied during his transport from the

5

jail to the Federal Medical Center in Springfield, Missouri. *See* Third Am. Compl. [Doc. No. 127] at 19–20. Mr. Folts originally asserted this claim against the Municipal Defendants and Defendants John Fisher and Kevin Mangus, the officers who applied the hand restraints. [*See id.*]. Judge Miles-LaGrange granted summary judgment to Fisher and Mangus, *see* Order [Doc. No. 295] *adopting* R&R [Doc. No. 283], but the claim was never resolved with respect to the Municipal Defendants. The Municipal Defendants sought summary judgment on Mr. Folts's GTCA claim in the same motions discussed above [Doc. Nos. 262 and 263], and that claim is still at issue for the same reasons the municipal liability claim is still at issue—i.e., because the Court (1) rejected the Board's argument that it was not a proper party to this action; (2) dismissed Mr. Folts's claims against GCCJA as duplicative of claims against the Board; but then (3) reconsidered that dismissal and recommitted the matter to Judge Erwin to consider the GCCJA's substantive arguments.

In sum, there are three claims still at issue in this lawsuit: (1) a § 1983 claim against Alger in her individual capacity based on alleged deliberate indifference to inhumane conditions of confinement, (2) a municipal liability claim against the Municipal Defendants based on inhumane conditions of confinement, and (3) a GTCA claim against the Municipal Defendants for injuries caused by tight hand restraints.

### C. The Municipal Defendants' Motion

Returning to the matter at hand, in response to Judge Erwin's Order, the Municipal Defendants filed a combined Motion for Summary Judgment [Doc. No. 381] limited to the issue of their municipal liability for inhumane conditions of confinement

during Mr. Folts's stay at the jail. Mr. Folts filed a Response [Doc. No. 389], and the Municipal Defendants filed a Reply [Doc. No. 390].

In the Motion, the Municipal Defendants argue that the GCCJA has final policymaking authority for the jail, that the jail's formal sanitation policy required housing units to be cleaned daily and inspected regularly,[3] and that the jail's practice was to provide cleaning supplies to inmates daily. *See* Mot. [Doc. No. 381] at 2–3, ¶¶ 3, 5–8. They also argue that there is no evidence showing any custom of unsanitary conditions or a pattern of conduct that would have put the Municipal Defendants on notice of inadequate supervision. *Id.* at 10–11. In support, they point to evidence from the Oklahoma Department of Health demonstrating that the jail had no documented incidents (much less a history or pattern) of denying cleaning supplies to inmates or permitting unsanitary conditions at the jail. *Id.* at 4, ¶ 12. Defendants further argue that there is no evidence Gerlach or any other person with final policymaking authority for the jail personally participated in the underlying constitutional violation. *Id.* at 9 (noting that the Court previously granted qualified immunity to Gerlach).

---

[3] As both Mr. Folts and Judge Erwin point out, the sanitation policy attached to the Municipal Defendants' Motion [Doc. No. 381-6] indicates that it was adopted in July 2016—two years after the incidents described in the Third Amended Complaint. The Municipal Defendants acknowledged this error by filing a Notice of Corrected Exhibit [Doc. No. 392]. The Notice confirms that the sanitation policy attached to the Motion was not the version in place during the time Mr. Folts was housed at the jail. The Notice advises that the 2016 policy was attached in error and that Defendants intended to attach the prior version, adopted in 2013 and attached as Exhibit 1 to the Notice [Doc. No. 392-1]. Defendants further note that the correct version was attached as an exhibit to GCCJA's original motion for summary judgment [Doc. No. 263-7].

In response, Mr. Folts points out that the sanitation policy attached to the Motion was enacted after he left the jail, and he argues that even if that policy did apply, it only required cleaning of "housing units," not holding cells. *See* Resp. [Doc. No. 389] at 5, 11–12; *see also supra* n. 3. Mr. Folts suggests that this omission led to the unsanitary conditions in his holding cell. He also disputes the Municipal Defendants' assertion that Gerlach did not personally participate in the underlying constitutional violation. Resp. at 9. Mr. Folts references exhibits he filed in response to the Board's previous motion for summary judgment, showing that he made written requests to Gerlach, notifying him of unsanitary conditions and requesting to be moved or provided with cleaning supplies. *Id.*; *see also* Handwritten Letters [Doc. No. 273-2] at 46, 48–49, 51.

### D.     The Report and Recommendation

Judge Erwin's R&R recommends that the Court grant the Municipal Defendants' Motion. The R&R does not address the jail's formal sanitation policy or Gerlach's alleged involvement in the underlying constitutional violation and instead focuses on Mr. Folts's theory that the Municipal Defendants are liable based on a failure to supervise jail employees. *See* R&R [Doc. No. 391] at 7–9. Judge Erwin concludes that Mr. Folts cannot prevail on such a theory because his evidence reflects only isolated instances of unsanitary conditions, not a pattern of tortious conduct that would have put the county on notice that a failure to supervise was likely to result in a constitutional violation. *See id.* at 9–11.

Mr. Folts timely objected to the R&R, arguing that Judge Erwin did not properly consider all of his evidence or view the evidence in the light most favorable to him. *See*

8

Obj. [Doc. No. 394]. Mr. Folts contends that his being denied cleaning supplies multiple times over a 7-day period amounts to a widespread pattern of conduct, not an isolated incident. *See id.* at 5. Mr. Folts also repeats his argument that the Municipal Defendants are liable because Gerlach was involved in the underlying violation, and he newly argues that Gerlach authorized jail employees to ignore his requests for cleaning supplies. *Compare* Obj. [Doc. No. 394] at 2–3, 6, *with* Resp. to Mot. [Doc. No. 389] at 9–10. Finally, Mr. Folts presents a new argument that the Municipal Defendants are liable because the jail's grievance policy was not available to detainees in holding cells, where he was housed. Obj. [Doc. No. 394] at 4–5. Mr. Folts asserts that the jail's policy was to provide federal detainees like him with "non-formal" Federal Detainee Request for Service forms rather than formal grievance or request forms. *Id.* at 4. Mr. Folts contends that cleaning supplies were available only through a formal request, and that the jail's policy of issuing "non-formal" forms to federal detainees was an effort by the Municipal Defendants to avoid acquiring knowledge of detainees' requests for cleaning supplies and/or complaints about cell conditions. *Id.*

## II.     DISCUSSION

### A.     Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material 'if under the substantive law it is essential to the proper disposition of the claim.'" *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (quoting *Becker v. Bateman*, 709 F.3d 1019, 1022

9

(10th Cir. 2013)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if a rational trier of fact could find in favor of the nonmoving party on the evidence presented. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Where the movant does not bear the burden of persuasion at trial, "[the movant] may satisfy this burden 'by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim.'" *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1211 (10th Cir.), *cert. denied*, 140 S. Ct. 554 (2019) (quoting *Herrera*, 506 F.3d at 1309); *see also Celotex Corp.*, 477 U.S. at 322–23 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Once the movant meets its initial burden, "the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Herrera*, 506 F.3d at 1309 (citations omitted). The nonmovant must identify such facts "by reference to affidavits, deposition transcripts, or specific exhibits

incorporated therein." *Id*. Unsupported statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

In applying this standard, the Court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted). Because Mr. Folts appears pro se, the Court construes his filings liberally but cannot take on the responsibility of serving as his attorney in constructing arguments or searching the record. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### B.     Standard for Municipal Liability

In *Monell*, the Supreme Court explained that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. Rather, "to prove a § 1983 claim against a municipality, a plaintiff must show the existence of a municipal policy or custom which directly caused the alleged injury." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). Additionally, a plaintiff must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton*, 489 U.S. at 389). Accordingly, to prevail on a § 1983 claim against the Municipal Defendants, "the plaintiff must prove '(1) official policy or custom, (2) causation, and

11

(3) state of mind.'" *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (bracket omitted) (quoting *Schneider*, 717 F.3d at 769).

### 1. Official Policy or Custom

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986). The following practices may be deemed an official policy or custom for § 1983 municipal-liability purposes: "[1] a formal regulation or policy statement, [2] an informal custom that amounts to a widespread practice, [3] decisions of municipal employees with final policymaking authority, [4] ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and [5] the deliberately indifferent failure to adequately train or supervise employees." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239–40 (10th Cir. 2020) (quoting *Pyle*, 874 F.3d at 1266).

### 2. Causation

To establish causation, Mr. Folts must show that the municipality was the "moving force" behind the injury alleged. *Brown*, 520 U.S. at 404. This requires him to demonstrate "a direct causal link between the municipal action and the deprivation of federal rights." *Id*. Mr. Folts can satisfy this burden by showing that the policy is facially unconstitutional. *Hinkle*, 962 F.3d at 1240; *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("[W]hen an official municipal policy itself violates federal law,

issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question." (citation omitted)). However, "[w]hen a policy is facially constitutional, the burden of establishing causation (and culpability) is heavy." *Hinkle*, 962 F.3d at 1241 (citing *Brown*, 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." (citations omitted))).

### 3. State of Mind

Finally, to establish the requisite state of mind, Mr. Folts must prove that the municipal action was taken with deliberate indifference to its known or obvious consequences. *Id.* (citing *Brown*, 520 U.S. at 407). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (citation omitted). "While typically notice is 'established by proving the existence of a pattern of tortious conduct,' it can also be established 'in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'" *Hinkle*, 962 F.3d at 1241 (quoting *Waller*, 932 F.3d at 1284).

C.   Analysis

In the R&R, Judge Erwin characterized Mr. Folts's theory of municipal liability as being that Grady County had a well-settled custom of failing to supervise or punish jail employees who subjected detainees to unsanitary conditions of confinement. Judge Erwin concluded that Mr. Folts could not prevail on such a theory because he had not come forward with evidence of any widespread pattern or practice of unsanitary conditions that would have given the Municipal Defendants notice that their failure to act was substantially certain to result in a constitutional violation. *See* R&R [Doc. No. 391] at 9. Having conducted a de novo review of these issues, the Court agrees with the Magistrate Judge's analysis and finds that no purpose would be served by further discussion on that issue.

For the reasons discussed below, the Court also rejects Mr. Folts's additional theories of municipal liability—namely, that Gerlach was involved in or authorized the underlying constitutional violation and/or that the violation resulted from the Municipal Defendants' formal sanitation and grievance policies.

1. **Gerlach's Conduct**

To establish municipal liability based on Gerlach's conduct, Mr. Folts must show that Gerlach had final policymaking authority and that Gerlach's decisions (or his ratification of a subordinate's decisions) were the moving force behind Mr. Folts's constitutional injury. *See Hinkle*, 962 F.3d at 1239–40.

Mr. Folts's theory is that Gerlach was a final policymaker for the jail and that he knew of and ignored Mr. Folts's complaints of unsanitary conditions and requests for

cleaning supplies. In support, Mr. Folts points to evidence showing that he wrote letters addressed to Gerlach and Sheriff Weir on July 4, 5, 7, 8, and 9, complaining of unsanitary conditions and requesting cleaning supplies. [Doc. No. 273-2 at 46, 48–51]. Mr. Folts does not direct the Court to any other evidentiary materials.

The Court concludes that there is sufficient evidence in the record supporting an inference that Gerlach had final policymaking authority for the jail. *See* Mot. [Doc. No. 381] at 9 (stating that Gerlach "is the jail administrator for the GCLEC, employed by the GCCJA, and has final policymaking authority for the jail.").[4] However, the Court finds that Mr. Folts has not met his burden to come forward with specific facts from which a rational trier of fact could find that Gerlach's decisions (or his ratification of a subordinate's decisions) led to the unsanitary conditions in Mr. Folts's cell.

Mr. Folts's evidence falls short of showing that Gerlach knew about Mr. Folts's letters or complaints during the short time Mr. Folts was housed at the jail. Mr. Folts's letters were jointly addressed to Sheriff Weir or Jail Administrator Gerlach, making it uncertain where the letters were delivered. [*See* Doc. No. 273-2 at 46, 48–51].

---

[4] The record on this point is somewhat contradictory. The Municipal Defendants' statement of undisputed facts indicates that the GCCJA has final policymaking authority for the jail, not Gerlach. However, the jail's sanitation policy states that it was approved by Gerlach's predecessor, *see* Mot. at 3, ¶ 6, and the 2016 sanitation policy attached to the Motion indicates that it would have been adopted by Gerlach, *see* Doc. No. 381-6. Additionally, as noted above, the Motion argues that Gerlach had final policymaking authority for the jail. Construing the evidence in the light most favorable to the plaintiff, the record raises at least an inference that the GCCJA delegated some final policymaking decisions to Gerlach as jail administrator. *Cf. Langford v. Grady Cnty. Det. Ctr.*, 670 F. Supp. 2d 1213, 1242 n.32 (W.D. Okla. 2009) (finding that GCLEC Policy and Procedure Manual raised an inference that the GCCJA delegated some policymaking decisions to jail administrator).

Moreover, in an earlier motion for summary judgment, Gerlach submitted undisputed evidence that he had no personal interaction with Mr. Folts, did not receive any written complaints from Mr. Folts, and was not aware of Mr. Folts's allegations until after Mr. Folts left the jail. *See* Mot. [Doc. No. 263] at 17, ¶ 52; Gerlach Decl. at ¶ 19 [Doc. No. 263-3]; Folts Dep. 60:20–61:5 [Doc. No. 263-1]; Folts Dep. 51:21–53:18 [Doc. No. 275-2 at 99]. Mr. Folts did not dispute this evidence [*see* Doc. No. 275 at 4], and the Court therefore granted summary judgment to Gerlach on Mr. Folts's claims for both individual and supervisory liability, finding no evidence that Gerlach knew of and disregarded an obvious risk concerning Mr. Folts's conditions of confinement. *See* Order [Doc. No. 304] *adopting* R&R [Doc. No. 294].

Based on this evidence, the Court concludes that the Municipal Defendants are entitled to summary judgement on Mr. Folts's municipal liability claim to the extent it is based on Gerlach's conduct.

### 2. Formal policies

The Court also finds that Mr. Folts has not presented evidence of a formal regulation or policy statement that would support municipal liability. Mr. Folts points to two policies he claims are causally linked to his constitutional injury: the jail's grievance policy and its sanitation policy.

First, Mr. Folts argues that the jail had a policy of not providing federal detainees with official grievance forms, which prevented Defendants from learning of detainee complaints or requests for cleaning supplies. [Doc. No. 394 at 4]. However, this theory was not raised in the summary judgment briefing, and the Court will not consider

16

arguments or evidence presented for the first time in an objection to an R&R. *See United States v. Garfinkle,* 261 F.3d 1030, 1031 (10th Cir. 2001) ("theories raised for the first time in objections to the magistrate judge's report are deemed waived"); *Muhleisen v. Principi*, 73 F. App'x 320, 322 (10th Cir. 2003) (unpublished) ("district court was under no obligation to consider evidence introduced for the first time in an objection to the magistrate judge's recommendation").

Second, Mr. Folts argues that the sanitation policy led to the unsanitary conditions in his cell. Mr. Folts points out that while the sanitation policy specifically required cleaning supplies to be issued to inmates in the housing units, it did not mention that cleaning supplies should be given to detainees in the holding cells, where he was housed. *See* Resp. [Doc. No. 389] at 12. Mr. Folts suggests that the predictable consequence of this silence was a constitutional violation.

The sanitation policy is not facially unconstitutional, and therefore Mr. Folts's "burden of establishing causation (and culpability) is heavy." *Hinkle*, 962 F.3d at 1241. Mr. Folts has not met this heavy burden. At most, Mr. Folts's evidence supports a finding that jailers were not required to provide cleaning supplies to detainees in holding cells as a matter of course. But nothing in that policy suggests that jailers could *deny* cleaning supplies if a detainee requested them. To the contrary, the sanitation policy generally evinces a policy of maintaining cleanliness in the jail and of providing inmates with cleaning supplies. No reasonable jury could conclude that the policy's failure to specifically address holding cells was the "moving force" behind the unsanitary conditions in Mr. Folts's cell.

## III. CONCLUSION

Having carefully and thoroughly considered this matter *de novo*, and for the reasons discussed above, the Court:

(1) ADOPTS the Report and Recommendation [Doc. No. 391] issued by Magistrate Judge Erwin on September 25, 2019, as MODIFIED herein;

(2) GRANTS Defendants Grady County Board of County Commissioners and Grady County Criminal Justice Authority's Motion for Summary Judgment [Doc. No. 381] on Plaintiff's claim for municipal liability; and

(3) RECOMMITS this matter to Magistrate Judge Erwin to consider the Grady County Board of County Commissioners and Grady County Criminal Justice Authority's substantive arguments on Plaintiff's GTCA claim.

**IT IS SO ORDERED** this 31st day of March 2021.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE